IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL and DEBRA MANNINO, Individually
and as Personal Representatives of the ESTATE OF
INFANT MANNINO,

        Plaintiffs,

vs.                                                  Civ. No. 00-688 BB/WWD

RUTHVEN SAMPATH, M.D.,

        Defendant.

MEMORANDUM OPINION AND ORDER

        This matter comes before the Court upon Defendant's Motion to Limit the Testimony of Dr. Kennon filed May 11, 2001 [docket no. 142].  Simply stated, the question presented by the instant motion is whether Dr. Kennon, a treating physician of the infant whose death gave rise to this lawsuit, should be allowed to testify at trial as to the cause of the infant's death.  In the circumstances of this particular case, for reasons which will be set out in more detail below, I find that Dr. Kennon should be allowed to testify at trial as to the cause of the infant Mannino's death, if she can so testify as "a matter of reasonable medical certainty."  Dr. Kennon should not be allowed to testify as to any care given the infant Mannino before his arrival in Albuquerque, or the applicable standard of care for Defendant.

*Background*

        The infant Mannino was born at 18:50 hours on May 12, 1997, at the Gerald Champion Memorial Hospital, Alamogordo, New Mexico, and died at the University of New Mexico Hospital, Albuquerque, New Mexico, at 19:25 hours on May 13, 1997.  From 18:01 hours on May 13, 1997, until 19:25 hours, the time of death, Carol Kennon, M.D., rendered pediatric care to the

infant. Dr. Kennon listed the presumptive cause of death as sepsis and pneumonia. Jeffrey Nine, M.D., a pathologist, performed an autopsy on the infant and found that the cause of death was persistent pulmonary hypertension of the newborn, a congenital defect. Dr. Nine excluded sepsis and pneumonia as the cause of death. Plaintiff did not list Dr. Kennon as an expert; and since Dr. Kennon was a treating physician, Plaintiff, relying on D.N.M.-LR Civ. 26.3(b), contends that no compliance with Fed. R. Civ. P. 26(a)(2)(B) was necessary. At her deposition on March 15, 2001, Dr. Kennon was equivocal as to whether she was willing to testify as an expert witness for the Plaintiff. (Depo. p.14, lines 9-19). She indicated that she had an opinion with respect to the standard of care applicable to Defendant, and she thought that the cause of death was sepsis. Dr. Kennon had not read the autopsy report; and she could not say "one way or another" whether she had a factual basis for disagreeing with the pathologist's opinion as to the absence of bacterial pneumonia in the deceased infant. At the present time Plaintiffs' counsel indicates that Plaintiffs will not attempt to question Dr. Kennon in any way about the standard of care applicable to Defendant. By a letter from her counsel Dr. Kennon has indicated that she is "not qualified to offer expert testimony on any aspect of Dr. Sampath's treatment of the Mannino newborn." Her counsel has indicated that, if necessary, he would seek a protective order to bar any expert testimony from Dr. Kennon as to the infant's pre-Albuquerque care.

### *Discussion.*

Dr. Kennon admits that she is not qualified to testify about any aspect of the treatment of the Mannino newborn. I read "any aspect" as including pre-natal care of the mother which would have necessarily impacted the unborn child before and after birth. Accordingly, Dr. Kennon's testimony as to observations of the infant will be limited to what she observed in Albuquerque including any hospital records she reviewed before attending the infant.

Dr. Kennon signed the "Death Summary" in the University Hospital records, the last sentence of which reads "Presumed cause of death is bacterial sepsis leading to cardiovascular collapse." She should be allowed to explain that entry, including the clinical and other signs which led her to the tentative conclusion. However, unless she can testify that as a "matter of reasonable medical certainty" bacterial sepsis was the cause of death, she should not be allowed to give a present opinion as to the cause of death. Attending physicians are often called upon to give an opinion (in hospital records, death certificates, etc. ) as to the cause or "presumptive cause" of death of one of their patients. While they may not be sure to the degree required by the law to actually give an "opinion," their observations as attending physicians should not be brushed aside, assuming, as we have here, a threshold showing of competence to form such opinions. Our local rule exempting treating physicians from rendering Rule 26 reports is not free from difficulties. It would be prudent to identify a treating physician as an expert and to render a report when the treating physician is to be stretched into giving opinions which obviously depart from the duties he or she would perform in caring for the patient. Although such a report here possibly would have avoided this motion, there was no surprise; there was the opportunity to fully examine Dr. Kennon; and Defendant has suffered no prejudice. Rewriting what was recorded by Dr. Kennon is no solution, and it certainly distorts the historical "truth" of what was done and recorded.

Plaintiffs' procedural arguments about failing to determine if this motion was opposed are not well taken.

This cause shall proceed in accordance with the foregoing.

**IT IS SO ORDERED.**

                                                        UNITED STATES MAGISTRATE JUDGE